UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTOINE WOODS (D-2) and
AUSTIN WOODS (D-3),

    Defendants.

                               /

Case No. 17-20022

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS
COUNTS FIVE, EIGHT, AND ELEVEN [119]; AND DENYING DEFENDANTS'
MOTION TO SUPPRESS CELL PHONE RECORDS AND DATA [120]**

This matter comes before the Court on Defendants Antoine Woods and Austin Woods's Motion to Dismiss Counts Five, Eight, and Eleven, Charging Defendant Austin Woods with Using a Firearm During a Crime of Violence, in Violation of 18 U.S.C. § 924(c) (Dkt. # 119); and Motion to Suppress Cell Phone Records and Data (Dkt. # 120).  These motions were filed by Austin Woods on July 18, 2018.  On August 3, 2018, Antoine Woods filed a Motion to Adopt Pleadings Filed on Behalf of Co-Defendant Austin Woods (Dkt. # 124), which the Court will construe as a notice of joinder, relying on the arguments presented in Austin Woods's motions.  The Government filed responses on August 10, 2018.  (Dkt. # 127; Dkt. # 128).

In their first motion, Defendants argue that the 18 U.S.C. § 924(c) firearm counts with which they are charged must be dismissed because the reasoning in recent Supreme Court decisions has rendered the "residual clause" definition of "crime of violence" contained in § 924(c)(3)(B) unconstitutionally vague.  The Government responds that Defendants'

argument is irrelevant in this case because the charged § 924(c) counts are predicated on crimes that fall within the "elements clause" contained in § 924(c)(3)(A).

In their second motion, Defendants argue that, given the Supreme Court's recent decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), this Court should suppress all cell phone records and data obtained by the Government without a search warrant supported by probable clause as well as any evidence derived from these records. The Government responds that suppression is not warranted in this case because the Government reasonably relied in good faith on, and complied with, a valid statute and judicial precedent to obtain the cell site location information ("CSLI") records in this case long before the Supreme Court's decision in *Carpenter*.

The Court heard oral argument on the motions on August 23, 2018. Defendants subsequently filed four 18 U.S.C. § 2703(d) applications for disclosure under seal as exhibits to their motion to suppress, which the Court has reviewed. (Dkt. # 134). For the reasons stated below, Defendants' motions are DENIED.

I.  BACKGROUND

On September 6, 2017, Defendants were indicted in a First Superseding Indictment. (Dkt. # 41). After Defendant Austin Woods filed the instant motions, a federal grand jury returned a Second Superseding Indictment, which adds two new charges and one new defendant. (Dkt. # 126, filed on August 8, 2018). However, Counts One through Fifteen remain the same across both indictments, and the filing of the new indictment has no bearing on resolving the instant motions.

Defendant Antoine Woods is charged with: Conspiracy to Commit Murder in Aid of Racketeering (Count One); Conspiracy to Commit Assault with a Dangerous Weapon in

Aid of Racketeering (Count Two); Attempted Murder in Aid of Racketeering (Counts Three, Six, Nine, and Twelve); Assault with a Dangerous Weapon in Aid of Racketeering (Counts Four, Seven, Ten, and Thirteen); Using, Carrying, and Discharging a Firearm During and in Relation to a Crime of Violence (Counts Five, Eight, Eleven, and Fourteen); Conspiracy to Commit Obstruction of Justice (Count Sixteen); and Obstruction of Justice (Count Seventeen).

Defendant Austin Woods is charged with: Conspiracy to Commit Murder in Aid of Racketeering (Count One); Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering (Count Two); and Using, Carrying, and Discharging a Firearm During and in Relation to a Crime of Violence (Counts Five, Eight, Eleven, and Fourteen).

The allegations against Defendants concern a murder conspiracy and four separate shootings in the Eastern District of Michigan, Southern Division from October 2015 through March 2016 by members of the Detroit street gang Head Niggas in Charge, or HNIC. According to the Government, the shootings were aimed at a rival who had embarrassed Defendants in an incident that was captured on social media. Antoine Woods is alleged to have taken a lead role in the shootings, which were aimed at the rival and members of the rival's family, while Austin Woods is alleged to have supported and facilitated the shootings. The shootings allegedly took place outside a crowded strip club, at a busy hair salon, and twice at the rival's grandmother's house in the middle of the night.

## II. ANALYSIS

### A. Motion to Dismiss Counts Five, Eight, and Eleven

Defendants argue that the Court must dismiss Counts Five, Eight, Eleven, and presumably also Count Fourteen, which charge Defendants with Using, Carrying, and

3

Discharging a Firearm During and in Relation to a Crime of Violence under 18 U.S.C. § 924(c), because the "residual clause" definition of "crime of violence" contained in § 924(c)(3)(B) is unconstitutionally vague in light of the Supreme Court decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). The Government correctly notes, however, that Defendants' argument is irrelevant in this case because the charged predicate offenses on which the § 924(c) counts rest are crimes of violence under the § 924(c)(3)(A) "elements clause," which is wholly unaffected by *Johnson* and *Dimaya*.

### 1. The Supreme Court's Decisions in *Johnson* and *Dimaya*

Under 18 U.S.C. § 924(c), it is a federal crime to use or carry a firearm during and in relation to a crime of violence, or to posses a firearm in furtherance of a crime of violence. The statute defines "crime of violence" as an offense that is a felony and—

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is known as the "elements clause," and Subsection (B) is known as the "residual clause."

The Armed Career Criminal Act ("ACCA") contains a similarly worded elements clause and also had a residual clause until it was invalidated by *Johnson*. Under ACCA, "violent felony" means:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if

4

> committed by an adult, that-- (i) has as an element the use, attempted use, or threatened use of physical force against the person of another . . . .

18 U.S.C. § 924(e)(2)(B).

Likewise, the Career Offender Sentencing Guidelines contain a similarly worded elements clause, defining "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that-- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." U.S.S.G. § 4B1.2(a).

In *Johnson*, the Supreme Court invalidated ACCA's residual clause as unconstitutionally vague. In *Dimaya*, the Supreme Court concluded that *Johnson* required the invalidation of 18 U.S.C. § 16(b), which defined "crime of violence" as a felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." In both cases, the Court was concerned that the clauses called for courts to identify a crime's "ordinary case" in order to measure the crime's risk and created uncertainty about the level of risk that makes a crime "violent." *Dimaya*, 138 S. Ct. at 1215.

Because the language in the 18 U.S.C. § 924(c)(3)(B) residual clause is identical to the unconstitutionally vague language in 18 U.S.C. § 16(b), several Courts of Appeals have held that the 18 U.S.C. § 924(c)(3)(B) residual clause is unconstitutional based on the Supreme Court's reasoning in *Dimaya*. *See United States v. Salas*, 889 F.3d 681, 686 (10th Cir. 2018); *United States v. Eshetu*, No. 15-3020, 2018 WL 3673907, at *1 (D.C. Cir. Aug. 3, 2018).

The fact remains, however, that *Johnson* and *Dimaya* say nothing about the elements clause of any statute and have no import on this case because the predicate offenses here are crimes of violence under the 18 U.S.C. § 924(c)(3)(A) elements clause, as discussed below.

### 2. Whether the Charged § 924(c) Predicates are Crimes of Violence Under the § 924(c)(3)(A) Elements Clause

Again, under the § 924(c)(3)(A) elements clause, an offense is a "crime of violence" if it is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." "'[P]hysical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original). Courts use the "categorical approach" in order "to determine whether an offense constitutes a 'crime of violence' for purposes of § 924(c)(3)." *United States v. Rafidi*, 829 F.3d 437, 444 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2147 (2017), *reh'g denied*, 138 S. Ct. 33 (2017). Under the categorical approach, courts focus "on the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance." *Id.* (internal quotation marks and citations omitted). Courts "must consider the least objectionable conduct that would violate the statute" in order to determine whether a crime is categorically a crime of violence (put differently, whether the statute requires in every instance proof of the use, attempted use, or threatened use of physical force against the person or property of another). *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 2661 (2018). However, "there must be a realistic probability, not a theoretical possibility that Michigan would apply the statute to conduct that does not

6

satisfy the elements clause" in order to conclude that a crime is not categorically a crime of violence.  *Id.* (internal quotation marks and citations omitted).

Courts use the "modified categorical approach" to determine whether an offense constitutes a "crime of violence" when the offense is for violating a "divisible statute," which sets out one or more elements of the offense in the alternative.  *Rafidi*, 829 F.3d at 444. Where the underlying statute could be violated in a way that would constitute a crime of violence and in a way that would not, the modified categorical approach entails looking beyond statutory language to examine a limited set of documents in order to determine whether a conviction would necessarily depend on the commission of a crime of violence. *Id.*

Here, 18 U.S.C. § 1959(a)[1] is a divisible statute. *See United States v. Jones*, No. 7:16-CR-30026, 2017 WL 3725632, at *4 (W.D. Va. Aug. 29, 2017). Accordingly, the Court will employ the modified categorical approach and look to the indictment, which charges violations of 18 U.S.C. § 1959(a) based on crimes of violence committed in violation of Michigan state law.

---

[1] Subsection (a) of the Violent Crimes In Aid of Racketeering Activity ("VICAR") statute states in its entirety:

(a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished--

> (1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both;

> (2) for maiming, by imprisonment for not more than thirty years or a fine under this title, or both;

> (3) for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than twenty years or a fine under this title, or both;

> (4) for threatening to commit a crime of violence, by imprisonment for not more than five years or a fine under this title, or both;

> (5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for not more than ten years or a fine under this title, or both; and

> (6) for attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury, by imprisonment for not more than three years or a fine of1 under this title, or both.

18 U.S.C. § 1959(a).

In this case, Counts Five, Eight, Eleven, and Fourteen are each predicated on two crimes of violence: an attempted murder in aid of racketeering count, in violation of 18 U.S.C. § 1959(a)(5) and Mich. Comp. Laws § 750.83 (Assault with Intent to Commit Murder); and an assault with a dangerous weapon in aid of racketeering count, in violation of 18 U.S.C. § 1959(a)(3) and Mich. Comp. Laws § 750.82 (Felonious Assault). Count Five is predicated on Counts Three and Four; Count Eight is predicated on Counts Six and Seven; Count Eleven is predicated on Counts Nine and Ten; and Count Fourteen is predicated on Counts Twelve and Thirteen. Accordingly, the Court will consider whether Michigan Felonious Assault and Michigan Assault With Intent to Commit Murder are crimes of violence under the § 924(c)(3)(A) elements clause.

### i. Whether Michigan Felonious Assault is a Crime of Violence Under the § 924(c)(3)(A) Elements Clause

Mich. Comp. Laws § 750.82 provides that "a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of" felonious assault. The Sixth Circuit has already held that Michigan Felonious Assault is a crime of violence under the elements clause of U.S.S.G. § 4B1.2(a). *United States v. Harris*, 853 F.3d 318, 320 (6th Cir. 2017). The court explained that the statute requires both attempted or threatened offensive touching *and* the use of a dangerous weapon, and that "those two elements together add up to violent force, and thus to a crime of violence." *Id.* The court emphasized that the categorical approach does not "require that *each* element of an offense involve use of force; it requires that the offense *overall* include use of violent force." *Id.* at 321-22 (emphasis in original).

The same reasoning applies in this case because, as discussed above, the U.S.S.G. § 4B1.2(a) elements clause is almost identical to the § 924(c)(3)(A) elements clause.[2] The Government correctly notes that the Sixth Circuit has previously applied the same result of a categorical approach analysis of a statute under the U.S.S.G. § 4B1.2(a) elements clause to the § 924(c)(3)(A) elements clause. *See United States v. Henry*, 722 F. App'x 496, 500 (6th Cir. 2018) (concluding that unarmed bank robbery is a crime of violence under the § 924(c)(3)(A) elements clause). The Court therefore concludes that Counts Four, Seven, Ten, and Thirteen charge "crimes of violence" under the § 924(c)(3)(A) elements clause and properly support Counts Five, Eight, Eleven, and Fourteen. There is no reason to dismiss these counts based on *Dimaya*, as Defendants suggest.

### ii. Whether Michigan Assault With Intent to Commit Murder is a Crime of Violence Under the § 924(c)(3)(A) Elements Clause

Mich. Comp. Laws § 750.83 provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any number of years." The elements of Assault With Intent to Commit Murder ("AWIM") are: "(1) an assault, (2) with the specific intent to commit murder, (3) which, if successful, would make the killing murder." *People v. Beard*, 171 Mich. App. 538, 541 (1988). While the Sixth Circuit has not directly addressed whether this statute qualifies as a crime of violence, it has already held that a lesser included offense of AWIM, Assault With Intent to Do Great Bodily Harm Less than Murder, qualifies as a crime of violence under the U.S.S.G. § 4B1.2(a) elements clause. *See Raybon*, 867

---

[2]The § 924(c)(3)(A) elements clause is slightly broader because it concerns persons *or property*, whereas the U.S.S.G. § 4B1.2(a) elements clause concerns persons only.

F.3d at 631-32. In *Raybon*, the court noted that the elements of Assault With Intent to Do Great Bodily Harm Less than Murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *Id.* at 632 (quoting *People v. Brown*, 267 Mich. App. 141 (2005)). The Sixth Circuit found that "great bodily harm" met the Supreme Court's definition of "physical force" as violent force in *Johnson (2010)*. *Raybon*, 867 F.3d at 632. The court concluded that Assault With Intent to Do Great Bodily Harm Less than Murder qualifies as a crime of violence because the defendant "could not have been convicted of nonviolent assault because the crime he was convicted of included as an element an intent to do great bodily harm." *Id.* The Sixth Circuit determined that there was no realistic probability that the statute could apply to nonviolent simple assaults. *Id.*

The Sixth Circuit's reasoning in *Raybon* applies in this case. If the requisite element of intent to do great bodily harm in the lesser included offense of Assault With Intent to Do Great Bodily Harm Less than Murder means a defendant could not be convicted of nonviolent assault, as the Sixth Circuit concluded in *Raybon*, then the requisite element of intent to commit murder in the AWIM statute must mean that a defendant could not be convicted of nonviolent assault. *See United States v. Willis*, No. 13-CR-20303, 2017 WL 3531093, at *1 (E.D. Mich. Aug. 17, 2017) (reaching this same conclusion on the Government's motion for reconsideration) ("[B]ecause the lesser included offense constitutes a crime of violence, the greater offense also qualifies, as murder would cause harm to the body at least as significant, if not greater than, would be required to satisfy 'great bodily harm.'"). The Court therefore concludes that Counts Three, Six, Nine, and Twelve charge "crimes of violence" under the § 924(c)(3)(A) elements clause and properly

support Counts Five, Eight, Eleven, and Fourteen. There is no reason to dismiss these counts based on *Dimaya*, as Defendants suggest.

### B. Motion to Suppress Cell Phone Records and Data

Defendants next argue that the Court should suppress all cell phone records and data obtained by the Government without a search warrant supported by probable clause and any evidence derived from these records pursuant to the Supreme Court's recent decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

The Government responds that Defendants do not have standing to challenge the admissibility of CSLI records other than their own. The Government also argues that suppression is not warranted in this case because the Government reasonably relied in good faith on, and complied with, a valid statute and judicial precedent to obtain the CSLI records at issue before the Supreme Court's decision in *Carpenter*. At trial, the Government intends to introduce CSLI records for phone numbers used by Defendants as well as for phone numbers used by other individuals, including co-conspirators.

#### 1. The Stored Communications Act, Pre-*Carpenter* Case Law, and *Carpenter*

Before the Supreme Court's decision in *Carpenter*, the Stored Communications Act ("SCA") provided the legal basis for the Government to obtain CSLI:

> A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity– . . . (B) obtains a court order for such disclosure under subsection (d) of this section
> . . . .

18 U.S.C. § 2703(c)(1). Subsection (d), in turn, required that the Government meet a standard less than probable cause to obtain a disclosure order: "A court order for

disclosure . . . shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." *Id.* at § 2703(d).

On April 13, 2016, before the Government sought the CSLI records at issue in this case, the Sixth Circuit decided *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016), *cert. granted*, 137 S. Ct. 2211 (2017), *and rev'd and remanded*, 138 S. Ct. 2206 (2018). The court held that "the government's collection of business records containing cell-site data was not a search under the Fourth Amendment." *Id.* at 890. Therefore, the Government was not required to obtain a warrant supported by probable cause in order to obtain CSLI records from phone service providers. Instead, the § 2703(d) disclosure order sufficed. This decision was binding precedent in the Sixth Circuit at the very least until the Supreme Court granted certiorari on June 5, 2017, after the Government applied for and obtained disclosure orders for the CSLI records at issue in this case.

On June 22, 2018, the Supreme Court reversed the Sixth Circuit and held that, because "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Carpenter*, 138 S. Ct. at 2217, 2221.

### 2. Whether Defendants Have Standing to Challenge the Admissibility of CSLI Records for Phone Numbers Other Than Their Own

The Government argues that each Defendant has standing to challenge the admissibility of only his own CSLI records because Fourth Amendment interests are

13

personal. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998). A defendant can assert only his own Fourth Amendment rights, and not the Fourth Amendment rights of a third-party. *See Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133 (1978)); *see also United States v. Williams*, 354 F.3d 497, 510-11 (6th Cir. 2003) ("[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing.") (quoting *United States v. Padilla*, 508 U.S. 77, 81-82 (1993) (per curiam)).

At oral argument, Defendants made clear that they are challenging the CSLI records for their own phone numbers only, so the Court need not further address the standing argument. More specifically, Defendant Austin Woods challenges the CSLI records for his phone number ending in 0296, and Defendant Antoine Woods challenges the CSLI records for his four phone numbers ending in 3057, 8204, 4172, and 2262.[3]

### 3. Whether the Court Should Suppress Antoine Woods and Austin Woods's CSLI Records

During the investigation in this case, the Government obtained CSLI records for cell phone numbers used by Defendants and others that the Government intends to introduce at trial. These include CSLI records for one phone number used by Austin Woods and four

---

[3]The Government obtained CSLI records for two other phone numbers used by Antoine Woods ending in 3894 and 2806; however, the Government does not intend to introduce CSLI evidence for these two phone numbers at trial. (Dkt. # 127, Pg ID 586 n.3).

phone numbers used by Antoine Woods. The CSLI records for each phone number span a time period of 20-22 months. The Government applied for and obtained § 2703(d) disclosure orders from Magistrate Judges on March 28, 2017 for four of the phone numbers and on May 8, 2017 for one of the phone numbers. The Government received the CSLI records on April 14, 2017, April 27, 2017, and June 15, 2017.

The judicially-created exclusionary rule is designed to safeguard Fourth Amendment rights through its deterrent effect. *Herring v. United States*, 555 U.S. 135, 139-40 (2009). The exclusionary rule "is not a personal constitutional right," nor is it "calculated to redress the injury to the privacy of the victim of the search or seizure." *Stone v. Powell*, 428 U.S. 465, 486 (1976). The Supreme Court has held that the exclusionary rule's sole purpose is to deter future Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236-37 (2011). In deciding whether to apply the rule, courts weigh the benefits and costs of deterrence. *Herring*, 555 U.S. at 141. The benefit of some incremental deterrence must be weighed against the possibility of letting a guilty and possibly dangerous defendant go free. *Id.*

The Supreme Court has recognized a good-faith exception to the exclusionary rule. *Davis*, 564 U.S. at 238. The exclusionary rule does not apply when law enforcement acts with an objectively reasonable good-faith belief that their conduct is lawful because, in such a situation, the exclusionary rule loses much of its deterrent effect. *Id.* The good-faith exception applies to searches such as the ones at issue here, where the Government reasonably relied on a subsequently invalidated statute and binding judicial precedent. *See United States v. Pembrook*, 876 F.3d 812, 823 (6th Cir. 2017), *cert. granted, judgment vacated sub nom. Johnson v. United States*, 138 S. Ct. 2676 (2018) (agreeing with the

district court that "[a]lthough it may ultimately become settled [law] that long-term tracking via cell phones . . . requires a warrant supported by probable cause, that law was not established at the time the Government sought and obtained the cell-site data at issue in this case. Deterrence, therefore, will not be forwarded by suppression"); *United States v. Joyner*, No. 17-10289, 2018 WL 3853443, at \*3 (11th Cir. Aug. 14, 2018) (applying the good-faith exception and noting that, at the time the Government obtained the disclosure orders at issue, binding Eleventh Circuit precedent held that a § 2703(d) disclosure order comported with the Fourth Amendment and was not constitutionally unreasonable); *see also United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018); *United States v. Williams*, No. 17-CR-20758-VAR-DRG, 2018 WL 3659585, at \*3 (E.D. Mich. Aug. 2, 2018).

In this case, law enforcement relied on the SCA and binding Sixth Circuit precedent. At the time that the Government applied for and obtained the § 2703(d) disclosure orders at issue, the Supreme Court had not even granted certiorari in *Carpenter*. The Court concludes that the good-faith exception to the exclusionary rule applies in this case, and the Court denies Defendants' motion to suppress the CSLI records.

At oral argument, Defendants raised a new argument that the good-faith exception to the exclusionary rule cannot rescue the Government's § 2703(d) applications in this case because they are "bare bones" and fail to meet even the less than probable cause standard articulated in the SCA. *See United States v. West*, 520 F.3d 604, 610 (6th Cir. 2008) ("The *Leon* good faith exception does not apply to rescue a warrant issued on the basis of a 'bare bones' affidavit.") (internal quotation marks and citations omitted). Again, prior to *Carpenter*, § 2703(d) of the SCA required the Government to offer specific and articulable

facts in their applications showing that there were reasonable grounds to believe that the CSLI records sought were relevant and material to an ongoing criminal investigation.

As noted above, following oral argument, Defendants filed the applications at issue under seal, and the Court has reviewed them. The Government's March 28, 2017 applications explain that the Government is investigating criminal activities of the members and associates of HNIC, a criminal street gang, and list several suspected federal criminal violations. The applications state that officers have reviewed hundreds of police reports and conducted dozens of interviews with confidential informant, lay witnesses, and officers with personal knowledge about HNIC-related conduct. According to the applications, officers have also served several federal search warrants leading to the seizure of relevant digital and physical evidence, including firearms; have performed forensic analyses of numerous electronic medica; and have conducted surveillance. The applications go on to state that the investigation has revealed that HNIC is a violent criminal enterprise operating primarily in northwest Detroit whose members are involved in armed robberies, assaults, fatal and non-fatal shootings, armed narcotics trafficking, identity theft, and the manufacturing and possession of fraudulent financial transaction devices. Based on the investigation, ATF officers have identified a set of HNIC members and associates, which the applications list by name and corresponding cell phone numbers, who may have been involved in one or more of a list of criminal events on behalf of or in connection with HNIC, or a witness thereto. The list of criminal events include fatal and non-fatal shootings identified by month, year, and location. The applications state that subscriber records, call log records, and cell tower connection records would enable officers to potentially corroborate victim and witness statements, identify or eliminate individuals as suspects,

and/or evaluate the individuals' relationships with each other and HNIC. The Government's May 8, 2017 application contains the same information as well as additional information about Defendant Antoine Woods, a.k.a. "HNIC Pesh." The application explains that Antoine Woods is known to be associated with HNIC, and that pictures and text messages found on a cell phone seized from him in April 2017 indicate that he was targeting a rival gang member in the fall of 2015. According to the application, the rival and his family were victims of several shootings in that time frame, each identified by month, year, and location.

The Court concludes that each application satisfies the § 2703(d) standard of offering specific and articulable facts showing that there were reasonable grounds to believe that the CSLI records sought were relevant and material to an ongoing criminal investigation. *See Pembrook*, 876 F.3d at 823-24 (facts provided were sufficient to meet the § 2703(d) statutory standard where the application briefly informed the magistrate judge about two robberies in different locations and their similarities; explained that surveillance video from the two stores supported the suspicion that the same robbers committed both robberies; and concluded that cell tower information in the two locations may reveal a common cell phone number that was active at each location around the time of the crime, identification of which would aid in identifying potential suspects) (judgment vacated on other grounds). Defendants' motion to suppress the CSLI records on this basis is denied.

### III. CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' Motion to Dismiss Counts Five, Eight, and Eleven (Dkt. # 119) and DENIES Defendants' Motion to Suppress Cell Phone Records and Data (Dkt. # 120).

SO ORDERED.

                     S/Nancy G. Edmunds
                     Nancy G. Edmunds
                     United States District Judge

Dated: August 28, 2018

    I hereby certify that a copy of the foregoing document was served upon counsel of record on August 28, 2018, by electronic and/or ordinary mail.

                     S/Lisa Bartlett
                     Case Manager